in its second cause of action in said complaint is erroneous and should
be reversed, and that as to such second claim a new trial should be
had.

New trial granted, without costs. All concur.

───────────────

## McVICKAR GAILLARD REALTY CO. v. GARTH.

(Supreme Court, Appellate Division, First Department. February 9, 1906.)

1. BROKERS—CONTRACT—CONSTRUCTION.
    Where a contract between the owner of property and a broker, who
    undertook to bring about an exchange for certain other property, provided
    that such property should have an annual net rental of a specified sum, it
    meant that it should yield that amount above all liabilities of the owner,
    such as taxes, assessments, etc.

2. LANDLORD AND TENANT—LEASE—COVENANTS—CONSTRUCTION.
    A covenant by a tenant to pay taxes does not cover special assessments
    for public improvements.
    [Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Landlord and
    Tenant, § 521.]

3. SAME.
    A covenant by a tenant to comply with and execute all laws, orders,
    and regulations of the state or municipal authorities refers to building,
    sanitary, and police orders, laws, and regulations, and does not cover
    special assessments for public improvements.

Appeal from Trial Term, New York County.

Action by the McVickar Gaillard Realty Company against D. J.
Garth. From an order setting aside a verdict for plaintiff and grant-
ing a new trial, plaintiff appeals. Affirmed on opinion of the court
below.

The following is the opinion of the court below (Clarke, J.):

Action to recover real estate broker's commissions. Defendant employed
plaintiff to secure an exchange of his country property for a certain lot and
building thereon in the city. The written authority was as follows: "I wish
to submit the following proposition as a medium of exchange of my place of
approximately 200 acres, situated at Scarsdale, N. Y., for the office and loft
building Nos. 15–17 West Eighteenth street. I will put in my place free
and clear and take the property on Eighteenth street subject to a first mort-
gage of $190,000, at 4½ per cent. interest, due in five years, and add cash to
the amount of $20,000. This offer is made with the understanding that the
office building is rented for a term of 21 years at an annual net rental of
$19,000. This offer stands for ten (10) days." The complaint is based upon
the proposition that within the time limited in said offer plaintiff procured the
acceptance thereof by the owner of the Eighteenth street property, and that
a contract executed by said owner in accordance with the terms of said offer
was tendered to the defendant, who refused to sign the same; that plaintiff's
work as broker was completed when he brought the parties together upon
terms mutually agreeable, and was then entitled to its commission. In other
words, the plaintiff alleges performance upon its part, and can only succeed if
its evidence sustains such performance. The defendant denies such perform-
ance in that the clause of the offer—"this offer is made with the understanding
that the office building is rented for a term of 21 years at an annual net
rental of $19,000"—was not complied with; that the lease presented did not
secure an annual net rental of $19,000. Those words are clear enough. The
meaning is perfectly obvious, and the testimony shows that the understanding
of the parties was in accord with the plain language used, for the representa-
tive of the plaintiff, who conducted the negotiations with the defendant, testi-

fied in relation thereto as follows: "The rental was $19,000 net, I think it was, and out of that Mr. Garth had to pay 4½ per cent. interest on $190,000, which amounts to—I don't know just how much now. The difference between that and the total rental was what his income would be, and we figured out that this net income would be interest on $150,000 at about 7½ or 8 per cent., I think it was; some good percentage, at any rate. Q. Well, what about taxes? A. They were paid by the lessee. Q. What about assessments? A. They were paid by the lessee. Q. It was understood that they were to be paid? A. Yes, this was net income. Q. So that all taxes and assessments were to be paid by the lessee, as you understood, between you and Mr. Garth? A. Yes. Q. That was a distinct understanding at that time? A. That was understood then. Q. That he was to have the net income? A. A net income. Q. And all taxes, assessments, and Croton and other charges were to be paid by the tenant? A. Yes." The lease was for 21 years, at an annual rental of $19,000. It contained covenants obligating the lessee to pay all expenses of water meters, Croton water rates, and all other charges for the supply of water, all charges for cleaning sinks and keeping sidewalks in order; to promptly pay and discharge the taxes which shall be imposed upon said premises during each year of said term; to put and keep said premises and the elevators and hoists and the gas pipes and fixtures and the service pipes, stop cocks, and other water apparatus in good condition and safe and proper repair and in tenantable order during the term; and to promptly comply with and execute all laws, orders, and regulations of the state and municipal authorities * * * and not to call on the lessor for any disbursements or outlay during the term; to procure and pay for fire insurance to an amount not less than $200,000. But the lessee nowhere in terms covenanted to pay any assessments for public improvements which might be charged upon the property. The covenant to pay the taxes did not cover assessments. "A manifest distinction exists between taxes and assessments, which is distinctly recognized in the decisions. And it is held that an assessment is not a tax in many reported cases." Hassan v. City of Rochester, 67 N. Y. 528; Roosevelt Hospital v. Mayor, etc., 84 N. Y. 108; Matter of Hun, 144 N. Y. 472, 39 N. E. 376, and cases cited.

Nor is the payment of assessments covered by the phrase "to promptly comply with and execute all laws, orders and regulations of the state or municipal authorities." That covenant refers to building, sanitary, and police orders, laws, and regulations. It would be a violent stretch of language to apply those words to the payment of an assessment for a public improvement decided by the report of commissioners of estimate and assessment, and confirmed by the Supreme Court, to be a benefit to the property. The comprehensive minuteness of the covenants excludes reading additional provisions therein. "Expressio unius exclusio alterius." If, then, the lessor remains subject to the payment of assessments, as it seems to me he does, the lease does not assure a net rental of $19,000 for each year of the term. For assessments may, and not unlikely will, be laid during the term. The city is being made over. No one with certainty can foresee the public improvements which will be made during the next 21 years. A great work like the recent cutting through and widening of Elm street may be made in close enough proximity to this property to include it in its area of benefit. Sewers are frequently being built; parks may be opened or enlarged. The possibility is not too remote or too vague to be taken into consideration. The purpose was to insure a certain net rental. The lease does not conform to the agreement. The plaintiff has failed to show performance.

The motion to set aside the verdict and for a new trial is granted.

Argued before O'BRIEN, P. J., and PATTERSON, CLARKE, INGRAHAM, and LAUGHLIN, JJ.

W. D. Gaillard, for appellant.

S. O. Lockwood, for respondent.

PER CURIAM.    Order affirmed, with costs, on the opinion of the court below.